Filed 9/5/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| CATHERINE BAKER,<br><br>    Petitioner,<br><br>    v.<br><br>SAN MATEO COUNTY EMPLOYEES RETIREMENT ASSOCIATION,<br><br>    Respondent. | A171350<br><br>(San Mateo County<br>Super. Ct. No. 24-CIV-00495) |

Petitioner Catherine Baker worked for San Mateo County, went on medical leave in 2009, and then returned to a different position in 2015 and 2016 at the same pay rate before filing for disability retirement. Respondent San Mateo County Employees Retirement Association (SamCERA) determined the effective date of her retirement benefits to be in 2016, on the last day she received "regular compensation" pursuant to Government Code section 31724.[1]  Baker petitioned for a writ of mandate, asserting that the pay she received in 2015 and 2016 was not "regular compensation" under the statute because she had not returned to her original job position.  The trial court concluded otherwise, and denied the writ.

On appeal, Baker argues that the trial court erred in its interpretation of the term "regular compensation" in section 31724.  We disagree and affirm.

---

[1] Undesignated statutory references are to the Government Code.

1

# I. BACKGROUND

Baker was employed by San Mateo County as a Social Worker III starting in 2006. The position involved lifting and holding children, standing, and driving. After reporting back pain that prevented her from performing this work, Baker went on medical leave in 2009. She was on leave until 2015. Baker then returned as a "screener trainee," which involved on-site trainings and computer work. She was compensated for this position at the same pay rate as her original Social Worker III position, and her last paycheck was issued on January 21, 2016.

In 2017, Baker submitted a "service-connected" disability retirement application. Two years later, SamCERA recommended to the Board of Retirement (Board) that Baker's application be granted. It also recommended that, pursuant to section 31724, the effective date of her retirement benefits be deemed to be January 22, 2016.

Section 31724 is a provision of the County Employees Retirement Law of 1937 (CERL) (§ 31450 et seq.) that establishes the effective date of disability retirement benefits. (*Katosh v. Sonoma County Employees' Retirement Association* (2008) 163 Cal. App.4th 56, 59 (*Katosh*).) It provides, in relevant part, that "disability retirement allowance shall be effective as of the date such application is filed with the board, but not earlier than the day following the last day for which [the member] received regular compensation." (§ 31724.) And "[w]hen it has been demonstrated to the satisfaction of the board that the filing of the member's application was delayed by administrative oversight or by inability to ascertain the permanency of the member's incapacity until after the date following the day for which the member last received regular compensation, such date will be deemed to be the date the application was filed." (*Ibid.*) Here, SamCERA

explained that its recommended January 22, 2016 effective date was based on a "combination" of administrative oversight and inability to ascertain the permanency of Baker's incapacity.

The Board granted Baker's disability retirement application as recommended. Baker sought administrative review of that decision, arguing that the effective date of her benefits should have been "much sooner" than January 22, 2016. She claimed that her compensation in 2015 and 2016 was not "regular compensation" under section 31724 because her screener trainee assignment was not a return to her original position as a Social Worker III. After a hearing, the administrative law judge recommended denial of Baker's request to change the effective date. The Board adopted this recommendation.

Baker filed a petition for writ of administrative mandamus, again arguing that her compensation as a screener trainee was not "regular compensation" under section 31724. The trial court denied the petition, entering judgment in favor of SamCERA and confirming the January 22, 2016 effective date of Baker's retirement benefits. This appeal followed.

## II. DISCUSSION

The central question in this appeal is one of statutory interpretation: whether the term "regular compensation" in section 31724 includes the compensation paid to Baker during her position as a screener trainee at the same pay rate as her original Social Worker III position.

As a preliminary matter, the parties disagree about the applicable standard of review. Baker argues that we must apply independent judgment when construing a statutory provision. (*California Cannabis Coalition v. City of Upland* (2017) 3 Cal.5th 924, 934 (*Cannabis Coalition*).) But SamCERA contends that the ruling here is subject to substantial evidence

3

review because Baker is challenging the trial court's factual findings regarding the nature of her two job positions. Both parties are correct in some respect, as Baker's argument is twofold. She claims that (1) the term "regular compensation" in section 31724 must be interpreted to only include compensation from her "regular" employment in her original Social Worker III position, and if so, (2) her screener trainee assignment cannot be considered part of that original position because it was temporary in nature and involved different skills. Because we reject the first part of this argument, as set forth below and exercising our independent judgment, we need not and do not reach the second. (*Cannabis Coalition*, at p. 934.)

In answering the question of statutory interpretation raised here, our fundamental task is to give effect to the intended purpose of the provision and we apply well-settled principles of construction. (*Cannabis Coalition*, *supra*, 3 Cal.5th at pp. 933–934.) We begin with the words of the statute themselves because " ' " 'they generally provide the most reliable indicator of legislative intent.' " ' " (*Lopez v. Sony Electronics, Inc.* (2018) 5 Cal.5th 627, 634.) We ascribe to words "their ordinary meaning, while taking account of related provisions and the structure of the relevant statutory . . . scheme." (*Cannabis Coalition*, at p. 933.) " ' "If the statutory language is clear and unambiguous our inquiry ends." ' " (*Lopez*, at p. 634.) But if any ambiguity remains, we may then consider extrinsic aids such as legislative history materials. (*Cannabis Coalition*, at p. 934.)

Section 31724 uses the term "regular compensation" twice. It provides that "disability retirement allowance shall be effective as of the date such application is filed with the board, but not earlier than the day following the last day for which [the member] received regular compensation." (§ 31724.) It then specifies that, upon sufficient demonstration that an application was

4

delayed by "administrative oversight or by inability to ascertain the permanency of the member's incapacity until after the date following the day for which the member last received regular compensation, such date will be deemed to be the date the application was filed." (*Ibid*.)

Section 31724 does not contain or refer to any statutory definition of the term "regular compensation." Accordingly, we look to the ordinary meaning of the words and find *Katosh* instructive to our analysis. (*Katosh*, *supra*, 163 Cal.App.4th. at p. 65.) In that case, the appellate court was tasked with determining whether the term "regular compensation" in section 31724 includes compensation received for sick leave taken as time off. (*Katosh*, at p. 59.) The court cited dictionary definitions of the term "regular" that included " 'steady or uniform in course, practice, or occurrence: not subject to unexplained or irrational variation: steadily pursued' " and " 'returning, recurring, or received at stated, fixed, or uniform intervals.' " (*Id*. at p. 65, citing Webster's Third New International Dictionary (2002) p. 1913.) It also pointed to the statutory definition of "compensation" provided in CERL section 31460, as " ' "the remuneration paid in cash out of county or district funds, plus any amount deducted from a member's wages for participation in a deferred compensation plan . . . but does not include the monetary value of board, lodging, fuel, laundry, or other advantages furnished to a member." ' " (*Katosh*, at p. 65.) The court concluded that the term "regular compensation" in section 31724 includes compensation for sick leave taken as time off because, during such periods, employees receive their "*regular salary*" or "full wages." (*Katosh*, at pp. 65–66.)

We agree with *Katosh* that the plain meaning of the term "regular compensation" in section 31724 includes compensation received as regular salary or full wages. (*Katosh*, *supra*, 163 Cal. App.4th at pp. 65–66.) Here,

5

Baker concedes that her position as screener trainee was compensated at the same pay rate as her original Social Worker III position. Accordingly, we conclude that the compensation paid to Baker as a screener trainee was "regular compensation" under section 31724.

We reject Baker's attempt to distinguish *Katosh* because it was decided in a different factual context regarding sick leave. We see nothing in the above analysis regarding the ordinary meaning of the words "regular" or "compensation" that is limited to the context of sick leave. Nor are we persuaded by Baker's argument that the Legislature must have intended the word "regular" in section 31724 to refer to an employee's regular or original job position, or otherwise would not have included the word in the statute. As explained in *Katosh*, the word "regular" indicates a subset of the broader term "compensation," and includes compensation received as regular salary or full wages. (*Katosh, supra*, 163 Cal. App.4th at pp. 65–66.) Nothing in the plain language or structure of section 31724 (or the CERL) supports an interpretation of the word "regular" as a reference to a certain job position.

None of Baker's remaining arguments compel a contrary conclusion. First, she presents *Puckett v. Orange County Bd. of Retirement* (1988) 201 Cal.App.3d 1075 (*Puckett*) as the "centerpiece" of her briefing. That case is easily distinguishable, however, as it involved an employee whose retirement benefits were set after reassignment to a *lower-paying position*. (*Id*. at p. 1077.) Puckett was a fire apparatus engineer who applied for disability retirement in 1983. (*Ibid*.) While his application was pending, he was reassigned to a lower-paying position as a mechanic's helper for approximately two years. (*Ibid*.) His application was approved, and the effective date for his benefits was set in 1985. (*Ibid*.) Puckett's request to change that date back to 1983 was denied on the ground that he could not

6

receive disability retirement while working "in any paid capacity for the county." (*Id.* at p. 1078.)  The appellate court disagreed, explaining that Puckett should not be penalized for accepting an alternate county job while his application was pending.  (*Id.* at p. 1079.)  But the court also made clear that Puckett was not entitled to disability retirement payments on top of his compensation from the second job, as that would result in " 'double-dipping.' " (*Id.* at p. 1080.)  It thus directed that "Puckett should receive no more than an employee who continues in alternate county employment pursuant to Government Code section 31725.5, i.e. the difference between his compensation at his second county job and the higher salary at his former position." (*Puckett*, at p. 1080.)  Here, unlike *Puckett*, it is undisputed that Baker was compensated in her screener trainee position at the same pay rate as her original Social Worker III position.  There is no need to remedy any difference in the "regular compensation" she received in her two positions.

Baker argues next that our interpretation would be inconsistent with the general rule that pension statutes are to be liberally construed in an employee's favor.  "Although pension legislation is to be construed liberally, this rule 'should not blindly be followed so as to eradicate the clear language and purpose of the statute and allow eligibility for those for whom it was obviously not intended.' " (*City of Oakland v. Public Employees' Retirement System* (2002) 95 Cal.App.4th 29, 39.)  As explained above, the plain meaning of "regular compensation" in section 31724 is clear and we have no occasion to invoke the rule of liberal construction because there is no ambiguity to be resolved.  (Cf. *Skidgel v. California Unemployment Ins. Appeals Bd.* (2021) 12 Cal.5th 1, 23 [explaining that statutory construction " 'should not exceed the limits of the statutory intent' "].)

7

Finally, Baker argues that our interpretation would allow counties to unfairly control retirement benefit awards through the reasonable accommodation process and would discourage employees from participating in that process. But where " 'the application of firmly established rules of statutory construction' establish a statute's meaning, we 'may not rest' our decision 'on the weighing and balancing of public policy considerations.' " (*Skidgel v. California Unemployment Ins. Appeals Bd.*, *supra*, 12 Cal.5th at p. 26.) And in any event, SamCERA responds that Baker's proposed interpretation of the term "regular compensation"—to include only compensation received from an employee's original job position—would be entirely contrary to the accommodation process. "A primary purpose of a pension program is to encourage continued public service." (*Puckett*, *supra*, 201 Cal.App.3d at p. 1079.) It is unclear how any such limitation of the term, which has no basis in the language or structure of the statute, would effectuate this purpose.

In sum, we conclude that the term "regular compensation" in section 31724 includes compensation paid to Baker as a screener trainee at the same pay rate as her original Social Worker III position. The trial court did not err in denying the petition for a writ of mandate.

## III.  DISPOSITION

The judgment is affirmed. SamCERA is entitled to its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

8

_____

Langhorne Wilson, J.


WE CONCUR:



_____

Humes, P.J.



_____

Banke, J.



*Baker v. San Mateo County Employees Retirement Association* A171350


9

Trial Court:

Superior Court of the County of San Mateo

Trial Judge:

Hon. Nicole S. Healy

Counsel:

Law Offices of Martin Glickfeld, Martin Glickfeld, for Petitioner

Byers/Richardson, Patrick M.K. Richardson, for Respondent

*Baker v. San Mateo County Employees Retirement Association* A171350